# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN SESSING,<br><br>                    Plaintiff,<br><br>        v.<br><br>JEFFREY BEARD, et al.,<br><br>                    Defendants. | Case No.  1:13-cv-01684-LJO-MJS (PC)<br><br>**ORDER (1) DENYING WITHOUT PREJUDICE APPOINTMENT OF COUNSEL; and (2) DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>**(ECF No. 10)**<br><br>**AMENDED PLEADING DUE IN THIRTY (30) DAYS** |

Plaintiff Nathan Sessing is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Before the Court for screening is Plaintiff's FIRST amended complaint. For the reasons set forth below, the Court finds the FIRST amended complaint fails to state a cognizable claim and ORDERS it DISMISSED with leave to amend.

## I.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C.

1

1  § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has

2  raised claims that are legally "frivolous, malicious," or that fail to state a claim upon

3  which relief may be granted, or that seek monetary relief from a defendant who is

4  immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or

5  any portion thereof, that may have been paid, the court shall dismiss the case at any

6  time if the court determines that . . . the action or appeal . . . fails to state a claim upon

7  which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

8  **II.**    **PLEADING STANDARD**

9     Section 1983 "provides a cause of action for the deprivation of any rights,

10  privileges, or immunities secured by the Constitution and laws of the United States."

11  Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990), quoting 42 U.S.C. § 1983.

12  Section 1983 is not itself a source of substantive rights, but merely provides a method

13  for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386,

14  393-94 (1989).

15     To state a claim under § 1983, a plaintiff must allege two essential elements: (1)

16  that a right secured by the Constitution or laws of the United States was violated and (2)

17  that the alleged violation was committed by a person acting under the color of state law.

18  See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243,

19  1245 (9th Cir. 1987).

20     A complaint must contain "a short and plain statement of the claim showing that

21  the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations

22  are not required, but "[t]hreadbare recitals of the elements of a cause of action,

23  supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S.

24  662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

25  Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim that is

26  plausible on its face." Id. Facial plausibility demands more than the mere possibility that

27  a defendant committed misconduct and, while factual allegations are accepted as true,

28  legal conclusions are not. Id. at 667-68.

1    **III.    PLAINTIFF'S ALLEGATIONS**

2         Plaintiff, a prisoner housed at the California Substance Abuse and Treatment

3    Facility in Corcoran, California ("CSATF"), complains Defendants denied his request for

4    construction of an outdoor worship enclosure, thereby preventing Plaintiff's exercise of

5    his Asatru (Odinism) faith in violation of the First and Fourteenth Amendments and the

6    Religious Land Use and Institutionalized Persons Act.

7         Plaintiff names as Defendants (1) Beard, California Department of Corrections

8    and Rehabilitation ("CDCR") Director, (2) Stainer, CDCR Division of Adult Institutions

9    Director, (3) Sherman, CSATF Warden, (4) Cote, CSATF Community Partnership

10   Manager.

11        More specifically, Plaintiff alleges that:

12        Asatru faith mandates regular outdoor ceremonies on sanctified plots with

13   specific facilities similar to the outdoor worship area available to American Indian

14   religious adherents at CSATF.  Defendants denied Plaintiff's request that such facilities

15   be constructed. On October 19, 2012, the CDCR - Division of Adult Institutions, issued a

16   memorandum that created a policy against new outdoor worship areas. Plaintiff's

17   grievance regarding the foregoing was denied.

18        Plaintiff seeks (1) declaratory relief, (2) an affirmative injunction requiring

19   Defendants construct an outdoor worship area solely for use by Asatru adherents, and

20   (3) appointment of counsel.

21   **IV.    ANALYSIS**

22        **A.    CDCR Policy**

23        A request for injunctive relief against a state official requires that a policy or

24   practice of  the governmental entity be the moving force behind the violation. Hafer v.

25   Melo, 502 U.S. 21, 25 (1991); see also Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir.

26   2011). Plaintiff asserts the CDCR issued a memorandum creating a policy prohibiting

27   new outdoor worship areas. (ECF No. 10, at 3.)

28        Plaintiff does not allege facts sufficient to show a CDCR policy violated his rights.

1    He will be given an opportunity to amend. If he chooses to amend, he must more

2    specifically describe the memorandum to which he refers and set forth who authored it,

3    to whom it was distributed, to whom it applies, the reasons given for its adoption, and

4    explain how and why it was the moving force behind the alleged federal violations. He

5    must also explain how the memorandum applied to him and his request for outdoor

6    worship facilities, the reasons given for the denial of his request and any conditions of

7    denial. He must state whether he grieved the policy, the memorandum and its

8    application to him and, if so, what response prison officials gave to his grievance. See

9    Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011).

### B.   Linking Defendants to Violations

11        A § 1983 plaintiff must demonstrate that each defendant personally participated

12   in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

13   There must be an actual connection or link between the actions of the defendants and

14   the deprivation alleged to have been suffered by the plaintiff. See Monell v. Department

15   of Social Services, 436 U.S. 658 (1978). Government officials may not be held liable for

16   the actions of their subordinates under a theory of respondeat superior. Iqbal, 129 S.Ct.

17   at 1948. Since a government official cannot be held liable under a theory of vicarious

18   liability in § 1983 actions, plaintiff must plead sufficient facts showing that the official has

19   violated the Constitution through his own individual actions. Id. at 1948.

20        Plaintiff complains Defendants are "personally knowledgeable and responsible

21   for these violations", (ECF No. 10 at 3), but he does not explain why he believes this to

22   be so. Alleged violations by subordinates and predecessors are not linked to

23   Defendants merely because of their status or positions. Conclusions, speculation and

24   surmise are not sufficient to link Defendants to alleged rights violations.

25        There are no factual allegations before the Court suggesting Defendants

26   personally acted or failed to act so as to violate Plaintiff's rights. If Plaintiff chooses to

27   amend, he should provide factual detail demonstrating which Defendants did or did not

28   do what, when, and why and how his rights were violated.

## C.   **Free Exercise**

Under the Constitution, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments." Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972); see also O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) ("Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."). However, as with other First Amendment rights in the inmate context, prisoners' rights may be limited or retracted if required to maintain institutional security and preserve internal order and discipline. Bell v. Wolfish, 441 U.S. 520, 546 (1979).

The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), overruled in part by Shakur, 514 F.3d at 884-85; see also Lau v. Harrington, 2012 WL 3143869, *8 (E.D. Cal. August 1, 2012).

Restrictions on access to religious opportunities, whether group services, chapel visits, or meetings with religious advisers must be found reasonable in light of four factors: (1) whether there is a "valid, rational connection" between the regulation and a legitimate government interest put forward to justify it; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation). Turner v. Safley, 482 U.S. 78, 89–90 (1987); Mauro v. Arpaio, 188 F.3d 1054, 1058-59 (9th Cir. 1999). Accordingly, prison regulations and operating procedures require reasonable efforts to provide for the religious and spiritual welfare of inmates.[1]

---

[1] See Cal. Code Regs. tit. 15, § 3210(d), "A request for a religious service accommodation that requires a specific time, location and/or item(s) not otherwise authorized, will be referred to a Religious Review Committee (RRC) for review and consideration. The RRC shall be comprised of designated chaplains,

Plaintiff states the Asatru faith mandates regular outdoor ceremonies on sanctified land with specific facilities. He complains he can not practice his religion without a newly constructed outdoor worship area. However, he does not provide facts sufficient for the Court to analyze this claim under the Turner factors. The Court can not determine what regulatory and policy requirements, if any, were imposed; whether legitimate institutional purposes were served by denial of a new outdoor worship area; why Plaintiff believes outdoor worship is required by his Asatru faith; whether he was prevented from engaging in all outdoor worship or whether there were other means of outdoor worship available as an alternative to new facilities; and whether there were alternatives to the policy requirements.

Plaintiff's allegations do not demonstrate that construction of new outdoor facilities is the only means to avoid substantially burdening a sincerely held Asatru belief. Nor is not clear that Plaintiff has been denied "all means of religious expression." Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993), citing O'Lone, 482 U.S. at 351-52; see Pierce v. County of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008) (denial of all access to religious worship opportunities can violate the First Amendment).

Plaintiff has not alleged a violation of his right to free exercise of religion. If Plaintiff chooses to amend, he must address the issues discussed above and allege facts showing how and why Defendants' complained-of actions are not reasonably related to a legitimate penological interest.

**D.   RLUIPA**

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in

---

and a correctional captain or their designee. Accommodation for religious services that are not granted, shall be for reason(s) which would impact facility/unit safety and security, and orderly day to day operations of the institution. See also CDCR Operations Manual Article 6, § 101060.1, "The Department shall make a reasonable effort to provide programs for the religious and spiritual welfare of all interested inmates."

1
2

furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

3

See Pub.L.No. 106–274, 114 Stat. 803 (2000) (codified at 42 U.S.C. § 2000cc–1).

4
5

RLUIPA "mandates a stricter standard of review for prison regulations that

6

burden the free exercise of religion than the reasonableness standard under <u>Turner</u>."

7

<u>Shakur</u>, 514 F.3d at 888, <u>citing</u> <u>Warsoldier v. Woodford</u>, 418 F.3d 989, 994 (9th

8

Cir.2005). The Supreme Court has noted "RLUIPA . . . protects institutionalized persons

9

who are unable freely to attend to their religious needs and are therefore dependent on

10

the government's permission and accommodation for exercise of their religion." <u>Cutter v.</u>

11

<u>Wilkinson</u>, 544 U.S. 709, 721 (2005). RLUIPA defines religious exercise to include "any

12

exercise of religion, whether or not compelled by, or central to, a system of religious

13

belief." 42 U.S .C. § 2000cc–5(7)(A); <u>San Jose Christian College v. City of Morgan Hill</u>,

360 F.3d 1024, 1034 (9th Cir. 2004).

14
15

Plaintiff bears the initial burden of demonstrating that Defendants substantially

16

burdened the exercise of his religious beliefs. <u>Warsoldier</u>, 418 F.3d at 994-95). A

17

"substantial burden" is one that is "oppressive to a significantly great extent." <u>Id.</u> at 995.

It "must impose a significantly great restriction or onus upon [religious] exercise." <u>Id.</u>

18
19

If a plaintiff meets this burden, the defendants must demonstrate that "any

20

substantial burden of [plaintiff's] exercise of his religious beliefs is both in furtherance of

21

a compelling governmental interest and the least restrictive means of furthering that

22

compelling governmental interest." <u>Id.</u> "RLUIPA is to be construed broadly in favor of

protecting an inmate's right to exercise his religious beliefs." <u>Id.</u>

23
24

Plaintiff does not state a claim under RLUIPA. Should he choose to amend,

25

Plaintiff must allege facts demonstrating named Defendants substantially burdened the

exercise of his religious beliefs.

26

**E.    Equal Protection**

27

The Equal Protection Clause of the Fourteenth Amendment requires that persons

28

7

1   who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center,

2   Inc., 473 U.S. 432, 439 (1985). Prisoners are protected from intentional discrimination

3   on the basis of their religion, Freeman, 125 F.3d at 737, citing Cruz, 405 U.S. at 321-

4   22), abrogated on other grounds by Shakur, 514 F.3d at 884-85 (9th Cir 2008), and are

5   entitled to a reasonable opportunity of pursuing his or her faith comparable to the

6   opportunity afforded fellow prisoners who adhere to conventional religious precepts.

7   Shakur, 514 F.3d at 891. Prison officials can not discriminate against particular

8   religions. See Cruz, 405 U.S. at 321-22; see also Rupe v. Cate, 688 F.Supp.2d 1035,

9   1049 (E.D. Cal. 2010).

10      However, "[i]n the prison context, even fundamental rights such as the right to

11  equal protection are judged by a standard of reasonableness, specifically whether the

12  actions of prison officials are reasonably related to legitimate penological interests."

13  Walker v. Gomez, 370 F.3d 969, 974 (9th Cir.2004), citing Turner, 482 U.S. at 89.

14              1.      Protected Class

15      Nothing before the Court suggests that Defendants intentionally discriminated

16  against Plaintiff based on his status as an Asatru adherent. See Thornton v. City of St.

17  Helens, 425 F.3d 1158, 1167 (9th Cir. 2005); see also Odneal v. Dretke, 435 F.Supp.2d

18  608, 617 (S.D. Tex. 2006), reversed in part by Odneal v. Pierce, 324 Fed.Appx. 297

19  (5th Cir. 2009) (prison officials did not act with discriminatory purpose in failing to

20  provide Native American inmate with religious ceremonies, thus defeating his equal

21  protection claim). Plaintiff does not state a claim under protected class theory.

22              2.      Disparate Treatment

23      Plaintiff complains he was treated differently from American Indian religious

24  adherents who had access to an outdoor worship area similar to that he requested. To

25  state an equal protection claim under disparate treatment theory, Plaintiff must allege

26  that: (1) he is a member of an identifiable class; (2) he was intentionally treated

27  differently from others similarly situated; and (3) there is no rational basis for the

28  difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

1    Plaintiff alleges that he is a member of identifiable class, i.e., an adherent of the

2   Asatru religion. However, Plaintiff has not met the other two prerequisites of such a

3   claim. Plaintiff does not explain how and why American Indian adherents and Asatru

4   adherents are similarly situated religious groups. He does not explain what outdoor

5   worship facilities exist at CSATF and when and why they were constructed, when and

6   why American Indian adherents are allowed access to outdoor worship facilities, and

7   whether, when and why Asatru adherents are denied similar access.

8    Even if Plaintiff had alleged dissimilar treatment of similarly situated religious

9   groups, nothing suggests such treatment was intentional and motivated by other than

10   institutional goals.

11    In summary, Plaintiff has failed to state an equal protection claim under either a

12   protected class theory or a disparate treatment theory. If Plaintiff chooses to amend, he

13   must explain which Defendants were responsible for which alleged violations and

14   describe specifically how and when they denied him his said constitutional rights.

15   **F.    Injunctive Relief**

16    Injunctive relief, whether temporary or permanent, is an "extraordinary remedy,

17   never awarded as of right." Winter v. Natural Res. Defense Council, 555 U.S. 7, 22

18   (2008). To prevail, the party seeking injunctive relief must show either "(1) a likelihood of

19   success on the merits and the possibility of irreparable injury, or (2) the existence of

20   serious questions going to the merits and the balance of hardships tipping in [the

21   moving party's] favor." Oakland Tribune, Inc. v. Chronicle Publishing Company, Inc.,

22   762 F.2d 1374, 1376 (9th Cir. 1985), quoting Apple Computer, Inc. v. Formula

23   International, Inc., 725 F.2d 521, 523 (9th Cir. 1984); see City of Los Angeles v. Lyons,

24   461 U.S. 95, 101-102 (1983) (plaintiff must show "real and immediate" threat of injury).

25    Plaintiff seeks an injunction against state officials and thus must demonstrate that

26   a policy or custom of the CDCR was the moving force behind violation of his rights. See

27   Hafer, 502 U.S. at 25; Kentucky v. Graham, 473 U.S. 159, 166 (1985). Here, for the

28   reasons stated, Plaintiff does not sufficiently allege a predicate CDCR policy.

1    Nor does Plaintiff allege any cognizable federal claim or relative hardship

2    demonstrating immediate threat of harm.

3    Plaintiff complaint does not state a claim for injunctive relief. If Plaintiff chooses to

4    amend, he must allege facts showing a need for and entitled to injunctive relief under

5    the above standards.

6    **G.    Appointment of Counsel**

7    Plaintiff requests appointment of counsel. This request is denied without

8    prejudice.

9    Plaintiff does not have a constitutional right to appointed counsel in this action,

10   Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997), partially overruled on other

11   grounds, 154 F.3d 952, 954 n.1 (9th Cir. 1998), and the Court cannot require an

12   attorney to represent Plaintiff pursuant to 28 U.S.C. § 1915(e)(1). Mallard v. United

13   States District Court for the Southern District of Iowa, 490 U.S. 296, 298 (1989). In

14   certain exceptional circumstances the Court may request the voluntary assistance of

15   counsel pursuant to section 1915(e)(1). Rand, 113 F.3d at 1525. However, without a

16   reasonable method of securing and compensating counsel, the Court will seek

17   volunteer counsel only in the most serious and exceptional cases. In determining

18   whether "exceptional circumstances exist, the district court must evaluate both the

19   likelihood of success of the merits [and] the ability of the [plaintiff] to articulate his or her

20   claims pro se in light of the complexity of the legal issues involved." Rand, 113 F.3d at

21   1525. Neither of these factors is dispositive and both must be viewed together before

22   reaching a decision on request of counsel under section 1915(d). Wilborn v.

23   Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Palmer v. Valdez, 560 F.3d 965, 970

24   (9th Cir. 2009). The burden of demonstrating exceptional circumstances is on the

25   Plaintiff. See Palmer, 560 F.3d at 970 (plaintiff "has not made the requisite showing of

26   exceptional circumstances for the appointment of counsel.").

27   Plaintiff does not demonstrate exceptional circumstances supporting appointment

28   of counsel. 28 U.S.C. § 1915(e)(1); Rand, 113 F.3d at 1525. The facts alleged appear

1  straightforward and unlikely to involve extensive investigation and discovery. Plaintiff

2  has to date demonstrated reasonable writing ability and legal knowledge. Moreover, it is

3  not apparent on the record that before bringing this request, Plaintiff exhausted diligent

4  effort to secure counsel. Plaintiff's lack of funds alone does not demonstrate that efforts

5  to secure counsel necessarily would be futile.

6      Accordingly,  Plaintiff's request for appointment of counsel should be denied

7  without prejudice. If Plaintiff chooses to request appointment of counsel, he should do

8  so by motion demonstrating exceptional circumstances.

9  **V.   <u>CONCLUSIONS AND ORDER</u>**

10     Plaintiff is not presently entitled to appointment of counsel. His complaint does

11  not state a claim for relief under § 1983. The Court will grant an opportunity to file an

12  amended complaint consistent with the foregoing. <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130

13  (9th Cir.  2000); <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

14     If Plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a

15  deprivation of his constitutional rights. <u>Iqbal</u>, 129 S.Ct. at 1948-49. Plaintiff must set

16  forth "sufficient factual matter . . . to state a claim that is plausible on its face." <u>Id.</u> at

17  1949, <u>quoting</u> <u>Twombly</u>, 550 U.S. at 555. Plaintiff must also demonstrate that each

18  named Defendant personally participated in a deprivation of his rights. <u>Jones</u>, 297 F.3d

19  at 934.

20     Plaintiff should note that although he has been given the opportunity to amend, it

21  is not for the purposes of adding new claims. <u>George v. Smith</u>, 507 F.3d 605, 607 (7th

22  Cir. 2007). Plaintiff should carefully read this screening order and focus his efforts on

23  curing the deficiencies set forth above.

24     Finally, Plaintiff is advised that Local Rule 220 requires that an amended

25  complaint be complete in itself without reference to any prior pleading. As a general

26  rule, an amended complaint supersedes the original complaint. <u>See</u> <u>Loux v. Rhay</u>, 375

27  F.2d 55, 57 (9th Cir. 1967), <u>overruled in part by</u> <u>Lacey v. Maricopa County</u>, 693 F.3d

28  896, 928 (9th Cir. 2012). Once an amended complaint is filed, the original complaint no

longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint", refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555.

Based on the foregoing, it is HEREBY ORDERED that:

1.    The Clerk's Office shall send Plaintiff (1) a blank civil rights amended complaint form and (2) a copy of his FIRST amended complaint filed December 9, 2013,

2.    Plaintiff's request for appointment of counsel is DENIED without prejudice,

3.    Plaintiff's complaint is DISMISSED for failure to state a claim upon which relief may be granted,

4.    Plaintiff shall file an amended complaint within thirty (30) days from service of this order, and

5.    If Plaintiff fails to file an amended complaint in compliance with this order, the undersigned will recommend this action be dismissed, with prejudice, for failure to state a claim and failure to prosecute, subject to the "three strikes" provision set forth in 28 U.S.C. § 1915(g). Silva v. Di Vittorio 658 F.3d 1090 (9th Cir. 2011).

IT IS SO ORDERED.

Dated:   January 2, 2014          /s/ Michael J. Seng
                                   UNITED STATES MAGISTRATE JUDGE