1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN SESSING,<br><br>            Plaintiff,<br><br>    v.<br><br>JEFFREY BEARD, et al.,<br><br>            Defendants. | Case No. 1:13-cv-01684-LJO-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT WITH PREJUDICE**<br><br>**(ECF No. 18)**<br><br>**OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS** |

10

11

12

13

14

15    Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights

16  action pursuant to 42 U.S.C. § 1983. He has declined Magistrate Judge jurisdiction. (ECF

17  No. 5.) The First Amended Complaint was dismissed for failure to state a claim. (ECF No.

18  13.) Plaintiff's motion to amend his Second Amended Complaint was granted before that

19  complaint was screened. His Third Amended Complaint is now before the Court for

20  screening. (ECF No. 18.)

21

22    **I.        PLEADING STANDARD**

23    Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or

24  immunities secured by the Constitution and laws of the United States." Wilder v. Virginia

25  Hosp. Ass'n, 496 U.S. 498, 508 (1990), quoting 42 U.S.C. § 1983. Section 1983 is not itself

26  a source of substantive rights, but merely provides a method for vindicating federal rights

27  conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

28

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 667-68.

## II.    PLAINTIFF'S ALLEGATIONS

Plaintiff, a prisoner housed at the California Substance Abuse and Treatment Facility in Corcoran, California ("CSATF"), is a practitioner of Asatru/Odinism, an "earth-based," polytheistic religion originating in Northern Europe several thousand years ago.  Plaintiff claims that Defendants' denial of his request to construct an outdoor worship area for the exclusive use of Asatruar, or Odinists, violates his Free Exercise rights under the First Amendment, his right to Equal Protection under the Fourteenth Amendment, and substantially burdens his religious practice under the Religious Land Use and Institutionalized Persons Act (RLUIPA).

Plaintiff names as Defendants (1) Beard, California Department of Corrections and Rehabilitation ("CDCR") Director, (2) Stainer, CDCR Division of Adult Institutions Director, (3) Sherman, CSATF Warden, and (4) Smith, CSATF Community Partnership Manager.

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff does not dispute that CSATF already has "pagan grounds" available for his outdoor worship needs. (ECF No. 18, at 25.)  Pursuant to a 2010 memorandum entitled "Pagan Grounds," signed by Defendant Sherman's predecessor, Ralph Diaz, outdoor worship areas were designated on each yard. (Id.)  These areas are not permanently fenced off or separated from the rest of the yard, but are "zoned off by using orange cones" during times of worship. (Id.)  The pagan grounds are available for use by "other religious groups," including Asatruar/Odinists. (ECF No. 18, at 15, 16).

Plaintiff filed a grievance outlining his dissatisfaction with the existing pagan grounds, as well as with a 2012 memorandum signed by Defendant Stainer's predecessor, Kathleen Dickinson, which states that "establishing new Outdoor Worship areas [is] not authorized." (ECF No. 18, at 23.) Plaintiff objects to the amenities of the pagan grounds, claiming that "setting up cones in the yard is not acceptable," and that he needs a fire pit, altar, and circle of stones. He claims that Native Americans are allowed to have a fire pit. He does not specify whether this fire pit is located on the pagan grounds or in a separate area, or whether Odinists are able to make use of it, too.

In any case, Plaintiff objects to sharing an outdoor worship space with other faiths, specifically Native Americans, because "that would transgress against their deities and his deities." (ECF No. 18, at 4). He includes background materials on Asatru which elaborate on the importance of having "sacred land" for outdoor worship that is "secure from trespassers." (ECF No. 18, at 29). The materials claim it is "imperative to Asatru worship that such sacred places be used only by the Asatru worshippers"  because "by sharing land, we are creating an environment of confusion and loss of focus for not only ourselves, but those spirits that we are calling upon to partake in the ritual with us." (ECF No. 18, at 37.)

Plaintiff argues that proceeds from inmate fund drives could be used to offset

3

construction of the new Asatru worship grounds.

Plaintiff's grievance was partially granted at the first level by Defendant Smith's predecessor, Cote, noting that "an outdoor area has previously been designated for religious faith groups to worship outdoors," and that if Plaintiff wished to use "the outside worship area already in place, [he could] do so by making arrangements" with the chaplain. (ECF No. 18, at 11.) At the second and third level of review, reviewers cited the 2012 memorandum prohibiting construction of new religious grounds, and denied Plaintiff's request for a separate worship area.  The denials noted that monies from inmate drives cannot be used for religious purposes.

Plaintiff specifies that he is suing Defendants in their official capacities and requests a permanent injunction ordering Defendants to construct an Asatru worship enclosure that includes a fire pit, altar, and circle of stones. He also seeks costs and appointment of counsel.

**III.    ANALYSIS**

Plaintiff argues that denial of his request to construct a new outdoor worship area, made in reliance on the CSATF policy outlined in the 2012 memorandum, violates his rights under the First and Fourteenth Amendments, as well as RLUIPA.  Plaintiff fails, however, to establish that the denial of separate outdoor grounds (1) substantially burdens his free exercise, (2) results in unconstitutional disparate treatment, or (3) substantially burdens his religious exercise under RLUIPA.  To the extent that Plaintiff argues Defendants have denied him use of a fire pit while allowing Native Americans to use it, the Court finds that he has not pleaded sufficient facts to support an Equal Protection claim.  The court will recommend dismissal of his third amended complaint.  Because the court recommends dismissal, plaintiff's request for appointment of counsel is moot.

## A. Free Exercise – First Amendment

Under the Constitution, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments." Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972); see also O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) ("Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."). However, as with other First Amendment rights in the inmate context, prisoners' rights may be limited or retracted if required to maintain institutional security and preserve internal order and discipline. Bell v. Wolfish, 441 U.S. 520, 546 (1979).

The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), overruled in part by Shakur, 514 F.3d at 884-85; see also Lau v. Harrington, 2012 WL 3143869, *8 (E.D. Cal. August 1, 2012).

Restrictions on access to religious opportunities must be found reasonable in light of four factors: (1) whether there is a "valid, rational connection" between the regulation and a legitimate government interest put forward to justify it; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation). Turner v. Safley, 482 U.S. 78, 89–90 (1987); Mauro v. Arpaio, 188 F.3d 1054, 1058-59 (9th Cir. 1999). Accordingly, prison regulations and operating procedures require reasonable efforts to provide for the religious and spiritual

1 welfare of inmates.[1]

2 Here, the Court does not question the sincerity of Plaintiff's belief in the importance

3 of practicing Asatru in a separate, sacred, outdoor place of worship.  However, the court

4 declines to find that Plaintiff's exercise has been substantially burdened.  Plaintiff has

5 certainly not been denied "all means of religious expression." Ward v. Walsh, 1 F.3d 873,

6 877 (9th Cir. 1993), citing O'Lone, 482 U.S. at 351-52; see Pierce v. County of Orange, 526

7 F.3d 1190, 1209 (9th Cir. 2008) (denial of all access to religious worship opportunities can

8 violate the First Amendment). Prison officials have expressly indicated that both the chapel

9 and the pagan grounds are available for his use.  Thus Plaintiff retains adequate avenues

10 of religious expression.

11 Because Plaintiff has failed to establish that his free exercise was substantially

12 burdened by the prohibition against constructing new religious grounds, the Court will

13 recommend dismissal of his First Amendment claim.

14 **B.     Equal Protection – Fourteenth Amendment**

15 The Equal Protection Clause of the Fourteenth Amendment requires that persons

16 who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc.,

17 473 U.S. 432, 439 (1985). Prisoners are protected from intentional discrimination on the

18 basis of their religion, Freeman, 125 F.3d at 737, citing Cruz, 405 U.S. at 321-22),

19 *abrogated on other grounds by* Shakur, 514 F.3d at 884-85 (9th Cir 2008), and are entitled

20 to a reasonable opportunity of pursuing his or her faith comparable to the opportunity

21 afforded fellow prisoners who adhere to conventional religious precepts. Shakur, 514 F.3d

22 at 891. Prison officials cannot discriminate against particular religions. See Cruz, 405 U.S.

[1] See Cal. Code Regs. tit. 15, § 3210(d), "A request for a religious service accommodation that requires a specific time, location and/or item(s) not otherwise authorized, will be referred to a Religious Review Committee (RRC) for review and consideration. The RRC shall be comprised of designated chaplains, and a correctional captain or their designee. Accommodation for religious services that are not granted, shall be for reason(s) which would impact facility/unit safety and security, and orderly day to day operations of the institution. See also CDCR Operations Manual Article 6, § 101060.1, "The Department shall make a reasonable effort to provide programs for the religious and spiritual welfare of all interested inmates."

1    at 321-22; see also Rupe v. Cate, 688 F.Supp.2d 1035, 1049 (E.D. Cal. 2010).

2
3    However, "[i]n the prison context, even fundamental rights such as the right to equal

4    protection are judged by a standard of reasonableness, specifically whether the actions of

5    prison officials are reasonably related to legitimate penological interests." Walker v. Gomez,

6    370 F.3d 969, 974 (9th Cir.2004), citing Turner, 482 U.S. at 89.

7                    **1.      Protected Class**

8        Nothing before the Court suggests that Defendants intentionally discriminated

9    against Plaintiff based on his status as an Asatru adherent. See Thornton v. City of St.

10   Helens, 425 F.3d 1158, 1167 (9th Cir. 2005); see also Odneal v. Dretke, 435 F.Supp.2d

11   608, 617 (S.D. Tex. 2006), reversed in part by Odneal v. Pierce, 324 Fed.Appx. 297 (5th

12
13   Cir. 2009) (prison officials did not act with discriminatory purpose in failing to provide Native

14   American inmate with religious ceremonies, thus defeating his equal protection claim).

15   Plaintiff does not state a claim under protected class theory.

16                   **2.      Disparate Treatment**

17       Plaintiff complains he was treated differently from American Indian religious

18   adherents who had access to an outdoor worship area with a fire pit. To state an equal

19   protection claim under disparate treatment theory, Plaintiff must allege that: (1) he is a

20   member of an identifiable class; (2) he was intentionally treated differently from others

21   similarly situated; and (3) there is no rational basis for the difference in treatment. Village of

22
23   Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

24       Plaintiff alleges that he is a member of identifiable class, i.e., an adherent of the

25   Asatru religion. However, Plaintiff has not pled sufficient facts to meet the other two

26   prerequisites of such a claim. Plaintiff has not specifically indicated that he is not allowed to

27
28   use the Native Americans' fire pit.  To the contrary, his administrative appeal responses

indicate that he can make use of both the outdoor worship grounds and the chapel.  Nor

1   has he indicated that, if in fact he does not have the same access to religious facilities as

2   Native Americans, there is no rational basis for the dissimilar treatment.

3       In summary, Plaintiff has failed to state an equal protection claim under either a

4   protected class theory or a disparate treatment theory. Accordingly, the Court will

5

6   recommend dismissal of his equal protection claim.

7       **C.    RLUIPA**

8       RLUIPA was passed, in part, to eliminate "frivolous or arbitrary" barriers to inmates'

9   religious observances.  Cutter v. Wilkinson, 544 U.S. 709, 716 (2005).  The Act provides

10  that "no government shall impose a substantial burden on the religious exercise of a person

11  residing in or confined to an institution… even if the burden results from a rule of general

12  applicability," unless the government demonstrates that the burden furthers "a compelling

13  governmental interest," and does so by the "least restrictive means." 42 U.S.C. § 2000cc-

14  1(a)(1)-(2); Holt v. Hobbs, 135 S.Ct. 853, 860 (2015); Greene v. Solano Cty. Jail, 513 F.3d

15  982, 986 (9th Cir. 2008).

16

17      An inmate's "religious exercise" refers not to his practice of religion as a whole, but

18  his engagement in particular practices or rituals within his religion. Greene, 513 F.3d at

19  987.  The practice need not be "compelled by, or central to, a system of religious belief" in

20  order to qualify as a "religious exercise." 42 U.S.C. § 2000cc-5(7)(A); Holt, 135 S.Ct. at

21  862; Alvarez v. Hill, 518 F.33d 1152, 1156 (9th Cir. 2008).

22

23      Plaintiff bears the initial burden of demonstrating that Defendants substantially

24  burdened the exercise of his religious beliefs. Warsoldier v. Woodford, 418 F.3d at 994-95

25  (9th Cir. 2005).  A "substantial burden" is one that is "oppressive to a significantly great

26  extent." Id. at 995. It "must impose a significantly great restriction or onus upon [religious]

27  exercise." Id. A substantial burden is presumed when a policy forces an inmate to choose

28  between "serious disciplinary action" and "engag[ing] in conduct that seriously violates his

beliefs." Holt, 135 S.Ct. at 862; accord Warsoldier, 418 F.3d at 996. An "outright ban on a particular religious exercise" also generally constitutes a substantial burden on that religious exercise. Greene, 513 F.3d at 988.

If a plaintiff establishes a substantial burden on his religious exercise, the defendants must demonstrate that such burden "is both in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling governmental interest." Id. "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Id.  Although prison security is a compelling interest, prison officials may not "justify restrictions on religious exercise simply by citing to the need to maintain order and security." Greene, 513 F.3d at 989-990. Instead, they must show that they "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." Id., 513 F. 3d at 989 (quoting Warsoldier, 418 F.3d at 999).

Cases in this circuit and others recognize that group and outdoor worship are valid religious exercises. Greene, 513 F.3d at 987(group worship); Nible v. CDCR, No. 1:13-cv-01127 2014 WL 458186, at *7 (E.D. Cal. Feb. 4, 2014)(assuming, for substantial burden purposes, that outdoor worship was a religious exercise for Odinist inmates); Fowler v. CDCR, No. 1:13-cv-00957 2014 WL 458168, at *7 (E.D. Cal. Feb. 4, 2014)(same); Davis v. Abercrombie, No. 11-00144 2014 WL 2716856, at *11 (D. Hawai'i June 13, 2014)(daily, group, outdoor group worship was religious exercise for Native Hawaiian inmates); LaPlante v. Mass. Dept. of Corrections, -- F.Supp.3d – , at *10 (D. Mass. 2015)(outdoor worship was religious exercise for Wiccan inmates).

However, denial of a separate area in which to worship outdoors has been held in multiple instances not to burden such exercise substantially, at least where plaintiffs have not articulated how sharing an outdoor space impedes their ability to practice their religion.

9

Nible, 2014 WL 458186, at *7; Fowler, 2014 WL 458168, at *7; Birdwell v. Cates, No. CIV-S-10-0719 2012 WL 1641964, at *14 (E.D. Cal. May 9, 2012). Here, Plaintiff *has* offered some indication of the problems that sharing space will create: there will be some unwanted interactions between Odinist and Native American deities, and the potential for "confusion and loss of focus" for Odinist worshippers. The Court notes that Plaintiff has not alleged that he himself has suffered any confusion or loss of focus, despite being required to share space with Native Americans.

Even if he had, however, Court finds that sharing space with other religious groups does not impose a substantial burden on the practice of Odinism/Asatru. Plaintiff's situation is not akin to the ones in Holt or Warsoldier, where the prison policies at issue imposed serious penalties for noncompliance. Plaintiff does not face any disciplinary action whether or not he chooses to make use of the pagan grounds. Nor is the situation like that in Greene, where the particular religious exercise at issue – group worship – has been banned entirely. Here, Plaintiff remains free to worship with other Odinists, inside or outside, and may presumably schedule a time to do so when the pagan grounds are not being used by other inmates. The Court does not otherwise perceive how the policy establishing a single, shared outdoor worship space is "oppressive" or places "a significantly great onus" on Plaintiff's religious exercise.

To the extent that Plaintiff defines his religious exercise as the practice of worshipping outdoors in an area off-limits to people of other faiths, giving credence to such a narrow definition of "exercise" might itself generate constitutional and/or RLUIPA problems. See Brown ex rel. Indigenous Inmates at N.D. State Prison v. Schuetzle, 368 F.Supp.2d 1009, 1023-1024 (D. N.D. 2005)(preventing non-Native Americans from attending sweat lodge ceremony would "not withstand constitutional muster"); Stover v. CCA, No. 1:12-cv-00393 2015 WL 874288 (D. Idaho Feb. 27, 2015)(Native American belief

"that allowing a two-spirited person [an individual suffering from gender identity disorder or gender dysphoria] to enter a sweat lodge utilized by single-spirited individuals would desecrate the religious sanctity of the lodge" was not a compelling interest under RLUIPA justifying exclusion of transgender inmate from sweat lodge); see also Wall v. Wade, 741 F.3d 492, 500 (4th Cir. 2014)(conditioning Plaintiff's participation in Ramadan on his possession of a prayer rug violated the First Amendment).

Thus, the Court declines to adopt such a narrow definition of "religious exercise" and finds that Plaintiff has not established that the prohibition on constructing new religious grounds substantially burdens his ability to practice outdoor, group Asatru worship. Accordingly, the Court will recommend dismissal of Plaintiff's RLUIPA claim.

**D. Appointment of Counsel**

Because the Court has recommended dismissal of all of Plaintiff's claims, Plaintiff's request for counsel is moot.

**V. CONCLUSION AND RECOMMENDATION**

Plaintiff's third amended complaint fails to state any cognizable claim. He was previously advised of pleading deficiencies and afforded the opportunity to correct them. Further leave to amend appears futile and should be denied.

The undersigned recommends that the action be dismissed with prejudice, that dismissal count as a strike pursuant to 28 U.S.C. § 1915(g), and that the Clerk of the Court terminate any and all pending motions and close the case.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and

11

1  Recommendations." Any reply to the objections shall be served and filed within fourteen

2  (14) days after service of the objections. The parties are advised that failure to file

3  objections within the specified time may result in the waiver of rights on appeal. Wilkerson

4  v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391,

5  1394 (9th Cir. 1991)).

6

7

8  IT IS SO ORDERED.

9
          Dated:    March 30, 2015                    /s/ *Michael J. Seng*
10                                               UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28