UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN SESSING,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>JEFFREY BEARD, et al.,<br><br>　　　　　　Defendants. | Case No. 1:13-cv-01684-LJO-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATIONS:**<br><br>**1) FOR SERVICE OF COGNIZABLE EQUAL PROTECTION CLAIMS**<br><br>**2) TO DISMISS REMAINING CLAIMS WITH PREJUDICE**<br><br>**(ECF No. 34)**<br><br>**OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS** |

### I.　PROCEDURAL HISTORY

Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. He has declined Magistrate Judge jurisdiction. (ECF No. 5.)

After the Court issued findings and recommendations (ECF No. 25) to dismiss Plaintiff's Third Amended Complaint (ECF No. 18) with prejudice for failure to state a claim, Plaintiff filed objections (ECF No. 32) that clarified the factual basis for his religious claims. As a result, the Court vacated the findings and recommendations and ordered Plaintiff to

1

file an amended complaint. (ECF No. 33.) Plaintiff's Fourth Amended Complaint (ECF No. 34) is before the Court for screening.

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## III. PLEADING STANDARD

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990), quoting 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 667-68.

### IV.     PLAINTIFF'S ALLEGATIONS

Plaintiff, a prisoner housed at the California Substance Abuse and Treatment Facility in Corcoran, California ("CSATF"), is a practitioner of Asatru/Odinism, an "earth-based," polytheistic religion originating in Northern Europe several thousand years ago.

Plaintiff names as Defendants (1) Beard, California Department of Corrections and Rehabilitation ("CDCR") Director, (2) Stainer, CDCR Division of Adult Institutions Director, (3) Sherman, CSATF Warden, and (4) Braggs, CSATF Community Partnership Manager.

According to Plaintiff, "[o]utdoor worship utilizing a fire pit and specific facilities, [including an altar and a circle of stones] is a central part of Asatru, and the religion cannot be practiced without it." Fire plays an important role in the *blot*, which is a monthly Odinist ceremony in which "food, drink, and/or objects" are sacrificed to the deities.

Plaintiff does not dispute that CSATF has "pagan grounds" designated for outdoor worship and available for his use. (ECF No. 34, at 24.) Pursuant to a 2010 memorandum entitled "Pagan Grounds," signed by Defendant Sherman's predecessor, Ralph Diaz, outdoor worship areas were designated on each yard. (Id., at 25.) This area is not permanently separated from the rest of the yard, but is "zoned off by using orange cones"

3

during times of worship. (Id., at 24.)  The pagan grounds are available for use by all "other religious faith groups," including Odinists. (Id.)

Plaintiff filed a grievance outlining his dissatisfaction with the existing pagan grounds and with a 2012 memorandum signed by Defendant Stainer's predecessor, Kathleen Dickinson, which prohibits the establishment of new worship areas. Plaintiff's primary objection to the pagan grounds is that they lack a fire pit, an altar, and a circle of stones.

Plaintiff's grievance was partially granted at the first level by Defendant Braggs' predecessor, Cote, noting that "an outdoor area has previously been designated for religious faith groups to worship outdoors," and that if Plaintiff wished to use "the outside worship area already in place, [he could] do so by making arrangements" with the chaplain. (ECF No. 18, at 11.) At the second and third level of review, reviewers cited the 2012 memorandum prohibiting construction of new religious grounds, and denied Plaintiff's request for a separate worship area.

The Native Americans at CSATF have separate ceremonial worship grounds that include a fire pit.  Plaintiff alleges that the Native Americans are "the sole religion which has been granted these accommodations" and that he does not have access to the Native American worship area.

However, Plaintiff objects to sharing an outdoor worship space with other faiths, specifically Native Americans, because "that would transgress against their deities and his deities." (ECF No. 18, at 4). He includes background materials on Asatru which elaborate on the importance of having "sacred land" for outdoor worship that is "secure from trespassers." (ECF No. 18, at 29). The materials claim it is "imperative to Asatru worship that such sacred places be used only by the Asatru worshippers"  because "by sharing land, we are creating an environment of confusion and loss of focus for not only ourselves, but those spirits that we are calling upon to partake in the ritual with us." (ECF No. 18, at

4

37.)

Therefore, Plaintiff alleges it is "unfeasible" for him to share the Native Americans' worship ground.  Plaintiff specifies that he is suing Defendants in their official capacities and requests a permanent injunction ordering Defendants to construct a separate worship area, including a fire pit, for the exclusive use of Odinists.

Plaintiff's grievance was denied by Cote, Defendant Braggs' predecessor.

## V.   ANALYSIS

Plaintiff argues that Defendants violated his rights under RLUIPA, the Free Exercise Clause, and the Equal Protection clause when they refused to construct an exclusive Odinist worship area and denied him access to a fire pit. The Court previously rejected Plaintiff's claims that he was entitled to a separate worship area; however, as he has renewed them in his latest complaint, the Court will reiterate its findings here.  The Court finds that Plaintiff has failed to link Defendant Beard to any of his claims, and that Plaintiff fails to state a Free Exercise or RLUIPA claim on any basis.  However, the Court concludes that Plaintiff has adequately stated an Equal Protection claim against Stainer, Braggs, and Sherman for denial of access to a fire pit.

### A. Linkage

.    Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77; Simmons, 609 F.3d at 1020-21; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Liability may not be imposed on supervisory personnel under the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and

5

failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Here, Plaintiff has failed to link Defendant Beard to any of his claims. Although he states that "the final level of review of all departmental grievances" is conducted on behalf of Beard, Beard's name does not appear on the third-level administrative appeal decision, and Plaintiff provides no facts suggesting that Beard knew about or was responsible for Plaintiff's alleged religious deprivations. Therefore, the Court will recommend that Defendant Beard be dismissed from this action with prejudice.

**B. Free Exercise – First Amendment**

Under the Constitution, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments." Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972); see also O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) ("Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."). However, as with other First Amendment rights in the inmate context, prisoners' rights may be limited or retracted if required to maintain institutional security and preserve internal order and discipline. Bell v. Wolfish, 441 U.S. 520, 546 (1979).

The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), overruled in part by Shakur, 514 F.3d at 884-85; see also Lau v. Harrington, 2012 WL 3143869, *8 (E.D. Cal. August 1, 2012). A substantial burden exists where an inmate is

denied "all means of religious expression." Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993), citing O'Lone, 482 U.S. at 351-52; Pierce v. County of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008) (denial of all access to religious worship opportunities can violate the First Amendment).

Restrictions on access to religious opportunities must be found reasonable in light of four factors: (1) whether there is a "valid, rational connection" between the regulation and a legitimate government interest put forward to justify it; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation). Turner v. Safley, 482 U.S. 78, 89–90 (1987); Mauro v. Arpaio, 188 F.3d 1054, 1058-59 (9th Cir. 1999). Accordingly, prison regulations and operating procedures require reasonable efforts to provide for the religious and spiritual welfare of inmates.[1]

The Court accepts for screening purposes the sincerity of Plaintiff's belief in the importance of practicing Asatru in a separate, sacred, outdoor area and of incorporating fire into observance of the *blot*. However, the court is unable to find that Plaintiff's exercise has been substantially burdened by either the failure to construct exclusive Odinist worship grounds or the denial of access to the fire pit. The link between prison security and allowing inmates to use fire is obvious, and the burden of constructing a separate worship area for every minority religion is self-evident. Meanwhile, despite Plaintiff's allegations that it is "unfeasible" for him to share worship space with Native Americans, and that he

---

[1] See Cal. Code Regs. tit. 15, § 3210(d), "A request for a religious service accommodation that requires a specific time, location and/or item(s) not otherwise authorized, will be referred to a Religious Review Committee (RRC) for review and consideration. The RRC shall be comprised of designated chaplains, and a correctional captain or their designee. Accommodation for religious services that are not granted, shall be for reason(s) which would impact facility/unit safety and security, and orderly day to day operations of the institution. See also CDCR Operations Manual Article 6, § 101060.1, "The Department shall make a reasonable effort to provide programs for the religious and spiritual welfare of all interested inmates."

cannot practice Odinism without fire, he has not alleged facts to support his claim that he was denied "all means of religious expression," or that he has been unable to practice his religion as a result of the inability to have a fire or the obligation to share worship grounds with other faiths. See Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993), citing O'Lone, 482 U.S. at 351-52; Pierce v. County of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008) (denial of all access to religious worship opportunities can violate the First Amendment). Prison officials have made both the pagan grounds and the chapel available for Odinist services. Plaintiff does not allege that he cannot hold *blots* at all as a result of the less-than-ideal worship conditions at CSATF; indeed, the materials in his pleadings suggest that many elements of the *blot*, including offerings to the gods and a communal meal, do not require fire at all. Therefore, the Court finds that Plaintiff has failed to establish that his free exercise was substantially burdened by the denial of access to a fire pit or the failure to construct a separate worship area. The Court will recommend dismissal of his First Amendment claims with prejudice.

### C. RLUIPA

RLUIPA was passed, in part, to eliminate "frivolous or arbitrary" barriers to inmates' religious observances. Cutter v. Wilkinson, 544 U.S. 709, 716 (2005). The Act provides that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution… even if the burden results from a rule of general applicability," unless the government demonstrates that the burden furthers "a compelling governmental interest," and does so by the "least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2); Holt v. Hobbs, 135 S.Ct. 853, 860 (2015); Greene v. Solano Cty. Jail, 513 F.3d 982, 986 (9th Cir. 2008).

An inmate's "religious exercise" refers not to his practice of religion as a whole, but his engagement in particular practices or rituals within his religion. Greene, 513 F.3d at

8

987. The practice need not be "compelled by, or central to, a system of religious belief" in order to qualify as a "religious exercise." 42 U.S.C. § 2000cc-5(7)(A); Holt, 135 S.Ct. at 862; Alvarez v. Hill, 518 F.33d 1152, 1156 (9th Cir. 2008).

Plaintiff bears the initial burden of demonstrating that Defendants substantially burdened the exercise of his religious beliefs. Warsoldier v. Woodford, 418 F.3d at 994-95 (9th Cir. 2005). A "substantial burden" is one that is "oppressive to a significantly great extent." Id. at 995. It "must impose a significantly great restriction or onus upon [religious] exercise." Id. A substantial burden is presumed when a policy forces an inmate to choose between "serious disciplinary action" and "engag[ing] in conduct that seriously violates his beliefs." Holt, 135 S.Ct. at 862; accord Warsoldier, 418 F.3d at 996. An "outright ban on a particular religious exercise" also generally constitutes a substantial burden on that religious exercise. Greene, 513 F.3d at 988.

If a plaintiff establishes a substantial burden on his religious exercise, the defendants must demonstrate that such burden "is both in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling governmental interest." Id. "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Id. Although prison security is a compelling interest, prison officials may not "justify restrictions on religious exercise simply by citing to the need to maintain order and security." Greene, 513 F.3d at 989-990. Instead, they must show that they "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." Greene, 513 F. 3d at 989 (quoting Warsoldier, 418 F.3d at 999).

Cases in this circuit and others recognize that group and outdoor worship are valid religious exercises. Greene, 513 F.3d at 987(group worship); Nible v. CDCR, No. 1:13-cv

-01127 2014 WL 458186, at *7 (E.D. Cal. Feb. 4, 2014)(assuming, for substantial burden purposes, that outdoor worship was a religious exercise for Odinist inmates); Fowler v. CDCR, No. 1:13-cv-00957 2014 WL 458168, at *7 (E.D. Cal. Feb. 4, 2014)(same); Davis v. Abercrombie, No. 11-00144 2014 WL 2716856, at *11 (D. Hawai'i June 13, 2014)(daily, group, outdoor group worship was religious exercise for Native Hawaiian inmates); LaPlante v. Mass. Dept. of Corrections, -- F.Supp.3d – , at *10 (D. Mass. 2015)(outdoor worship was religious exercise for Wiccan inmates).  Plaintiff does not dispute that he has access the outdoor "Pagan Grounds" at CSATF.

### 1. Exclusive Worship Area

Denial of a separate area in which to worship outdoors has been held in multiple instances not to burden such exercise substantially, at least where plaintiffs have not articulated how sharing an outdoor space impedes their ability to practice their religion. Nible, 2014 WL 458186, at *7; Fowler, 2014 WL 458168, at *7; Birdwell v. Cates, No. CIV-S-10-0719 2012 WL 1641964, at *14 (E.D. Cal. May 9, 2012).  Here, Plaintiff *has* offered some indication of problems that sharing space will create: unwanted interactions between Odinist and Native American deities and the potential for "confusion and loss of focus" for Odinist worshippers.  The Court notes that Plaintiff has not alleged that he himself has suffered any confusion or loss of focus, despite currently being required to share space with other pagan groups.

Even if he had, however, the Court finds that sharing space with other religious groups does not impose a substantial burden on the practice of Odinism/Asatru.  Plaintiff's situation is not akin to the ones in Holt or Warsoldier, where the prison policies at issue imposed serious penalties for noncompliance.  Plaintiff does not face any disciplinary action whether or not he chooses to make use of the pagan grounds. Nor is the situation like that in Greene, where the particular religious exercise at issue – group worship – has been

banned entirely.  Here, Plaintiff remains free to worship with other Odinists, inside or outside, and may presumably schedule a time to do so when the pagan grounds are not being used by other inmates.  Plaintiff has not alleged facts showing how the policy establishing a single, shared outdoor worship space is "oppressive" or places "a significantly great onus" on Plaintiff's religious exercise.

To the extent that Plaintiff defines his religious exercise as the practice of worshipping outdoors in an area off-limits to people of other faiths, giving credence to such a narrow definition of "exercise" might itself generate constitutional and/or RLUIPA problems. See Brown ex rel. Indigenous Inmates at N.D. State Prison v. Schuetzle, 368 F.Supp.2d 1009, 1023-1024 (D. N.D. 2005)(preventing non-Native Americans from attending sweat lodge ceremony would "not withstand constitutional muster"); Stover v. CCA, No. 1:12-cv-00393 2015 WL 874288 (D. Idaho Feb. 27, 2015)(Native American belief "that allowing a two-spirited person [an individual suffering from gender identity disorder or gender dysphoria] to enter a sweat lodge utilized by single-spirited individuals would desecrate the religious sanctity of the lodge" was not a compelling interest under RLUIPA justifying exclusion of transgender inmate from sweat lodge); see also Morrison v. Garraghty, 239 F.3d 648, 657 (4th Cir. 2001)(conditioning plaintiff's access to Native American religious items on tribal membership violated the Equal Protection clause); Wall v. Wade, 741 F.3d 492, 500 (4th Cir. 2014)(conditioning Plaintiff's participation in Ramadan on his possession of a prayer rug violated the First Amendment).

The Court cannot adopt such a narrow definition of "religious exercise". Plaintiff has not established that the prohibition on constructing new religious grounds substantially burdens his ability to practice outdoor, group Asatru worship.  Accordingly, the Court will recommend dismissal of Plaintiff's RLUIPA claim.

### 2. Denial of Access to Fire Pit

Similarly, the Court has found no cases involving Odinists or any other religions, holding that use of a fire pit is, on its own, a "religious exercise." See, e.g., Rouser v. White, 630 F.Supp.2d 1165, 1182 (E.D. Cal. 2009)(treating denial of access to fire pit as part of prison's broader trend of impinging on Wiccan group worship). Indeed, Plaintiff's pleadings indicate that fire is only one element of more extensive group worship ceremonies that Plaintiff has *not* been forbidden from holding. The Court therefore will consider use of a fire pit as an element of Plaintiff's outdoor, group worship. See Callaway v. Frink, No. CV-11-00090 2013 WL 1856524, at *4 (D. Mont. April 3, 2013)(deprivation of fire did not substantially burden Plaintiff's Odinist practice where it only impacted "certain parts" of his ceremony); see also Birdwell, 2012 WL 1641964, at *5, *13 (concluding that substitution of candles for fire did not substantially burden Odinist practice where fire played symbolic, ancillary role in rituals); cf. Rouser, 630 F.Supp.2d at 1182 (where Plaintiff's ability to engage in group worship was hindered by many prison policies, denial of access to a fire pit contributed to substantial burden under RLUIPA).

Plaintiff has not sufficiently pleaded that his outdoor, group worship was "substantially burdened" by his inability to have a fire. Plaintiff has not pleaded any facts to demonstrate that denial of the fire pit puts pressure on him to abandon his beliefs, or penalizes him for honoring his beliefs. See Warsoldier, 418 F.3d at 996; Rupe v. Beard, No. CV-08-2454 2013 WL 6859278, at *4 (E.D. Cal. Dec. 24, 2013). Plaintiff remains able to congregate outside or inside with his fellow Odinists, as well as to perform the majority of the rituals of the *blot* without restriction. The materials Plaintiff has included with his pleadings do not indicate that fire is essential to the actual performance of the *blot* (in contrast to the role of fire in a sweat lodge ceremony) but is merely symbolic. (ECF No. 34, at 44-45). Therefore, the Court will recommend dismissal of Plaintiff's RLUIPA claim.

**D. Equal Protection – Fourteenth Amendment**

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An incarcerated adherent of a minority religion has an equal protection right to "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts. Shakur, 514 F.3d at 884-85 (9th Cir 2008)(citing Cruz v. Beto, 405 U.S. 319, 322 (1972)). However, "[i]n the prison context, even fundamental rights such as the right to equal protection are judged by a standard of reasonableness, specifically whether the actions of prison officials are reasonably related to legitimate penological interests." Walker v. Gomez, 370 F.3d 969, 974 (9th Cir.2004), citing Turner, 482 U.S. at 89.  Thus, there is no requirement that "every sect or group within a prison" have "identical facilities or personnel." Allen v. Toombs, 827 F.2d 563, 568 (citing Cruz, 405 U.S. at 322 n. 2.); accord Hartmann v. CDCR, 707 F.3d 1114, 1123-1124 (9th Cir. 2013)(finding Wiccan inmates did not have Equal Protection right to paid chaplain when they had access to a volunteer chaplain).

**1. Protected Class**

Nothing before the Court suggests that Defendants intentionally discriminated against Plaintiff based on his status as an Asatru adherent. See Hartmann, 707 F.3d at 1123; Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005); see also Odneal v. Dretke, 435 F.Supp.2d 608, 617 (S.D. Tex. 2006), reversed in part by Odneal v. Pierce, 324 Fed.Appx. 297 (5th Cir. 2009) (prison officials did not act with discriminatory purpose in failing to provide Native American inmate with religious ceremonies, thus defeating his equal protection claim). Plaintiff does not state a claim under protected class theory.

**2. Disparate Treatment**

To state an equal protection claim under disparate treatment theory, Plaintiff must

13

allege that: (1) he is a member of an identifiable class; (2) he was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); accord Rouser, 630 F.Supp.2d at 1199.

Here, Plaintiff complains he was treated differently from Native American practitioners who had access to an outdoor worship area with a fire pit. Plaintiff's amended pleadings include sufficient facts to satisfy the three-part disparate treatment test. Plaintiff alleges that he is a member of identifiable class, i.e., an adherent of Odinism. Plaintiff alleges that, like the Native Americans, his religion requires the use of an outdoor space and a fire pit, but only the Native Americans are furnished such a space.  He alleges that the Native Americans have exclusive use of their space and that he is not allowed to use it. No explanation was given for the failure either to allow Plaintiff to use the Native Americans' fire pit or to provide a second fire pit for Odinists to use.

Therefore, the Court finds that Plaintiff has adequately stated an Equal Protection claim.  See Rouser, 630 F.Supp.2d at 1199-1200 (finding Wiccan plaintiff stated an Equal Protection claim on the basis of, *inter alia*, denial of access to a fire pit and sweat lodge).

## VI.   CONCLUSION AND RECOMMENDATION

Plaintiff's Fourth Amended Complaint states a cognizable Equal Protection claim against Stainer, Sherman, and Braggs on the basis of denial of access to a fire pit, but fails to state a First Amendment Free Exercise or a RLUIPA claim on any basis.  In addition, Plaintiff has failed to link Defendant Beard to his claims.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Plaintiff be permitted to proceed on the Fourth Amended Complaint's Fourteenth Amendment Equal Protection claim against Defendants Stainer, Sherman, and

      Braggs;

2. All other claims asserted in the Fourth Amended Complaint and Defendant Beard be DISMISSED WITH PREJUDICE;

3. Service be initiated on Defendants:

    a. Stainer; b. Sherman; c. Braggs

4. The Clerk of Court should send Plaintiff three (3) USM-285 forms, three (3) summonses, a Notice of Submission of Documents form, an instruction sheet and a copy of the Fourth Amended Complaint (ECF No. 34) filed June 19, 2015;

5. Within thirty (30) days from the date of adoption of these findings and recommendations, Plaintiff should complete and return to the Court the notice of submission of documents along with the following documents:

    a. Three completed summonses,

    b. One completed USM-285 form for each Defendant listed above,

    c. Four (4) copies of the endorsed Fourth Amended Complaint filed June 19, 2015; and

6. Upon receipt of the above-described documents, the Court should direct the United States Marshal to serve the above-named Defendants pursuant to Federal Rule of Civil Procedure 4 without payment of costs.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file

15

objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  June 28, 2015                              /s/ *Michael J. Seng*
                                                             UNITED STATES MAGISTRATE JUDGE